# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| Tammatha M. Rockey,<br>Plaintiff | Case No. 2:20cv |
| | Judge |
| vs. | Magistrate Judge |
| Furniture Finance Connection LLC.<br>c/o John Cary<br>550 Ohio Pike<br>Cincinnati, OH 45255 | |
| and | |
| John M. Cary<br>550 Ohio Pike<br>Cincinnati, OH 45255 | |
| and | |
| Synchrony Bank<br>CT Corporation System<br>4400 Easton Commons Way<br>Suite 125<br>Columbus, OH 4319 | |
| and | |
| Mattress by Appointment<br>Cincinnati, LLC.<br>c/o Alimasi Kajunju<br>12 Eswin St.<br>Cincinnati, OH 45218<br>   Defendants | |

**Complaint Seeking Statutory Damages, Actual and Treble Damages, for Federal Credit Disclosure and Deceptive, Unfair and Unconscionable Sales Practices, Attorney Fees; Jury Demand**

## Jurisdiction and Venue

1. These claims are brought pursuant to the federal truth-in-lending act, 15 U.S.C. §1601, et seq. as well as Regulation Z, 12 cfr 1026.1, et seq. [hereinafter the "Act" or "tila"] and the Ohio Consumer Sales Practices Act, O.R.C. §1345.01, et seq.

2. This Court has jurisdiction under the federal truth-in-Lending Act, 15 U.S.C. §1640(e) 28 U.S.C. §§ 1331 and 1337. Further, the Court may exercise its supplemental jurisdiction of all state law claims plead herein by virtue of its constitutional authority under Article III and 28 U.S.C. 1367 in that Plaintiffs' state law claims are so related to their federal claim that they form part of the same case or controversy. Venue is proper because the events that took place occurred entirely in this Division.

## Parties

3. Plaintiff, Tammatha M. Rockey, is both a "person" and a "consumer" respectively defined at 15 U.S.C. §1602(d) and (h) and O.R.C. §1345.01(D).

4. Defendant, Furniture Finance Connection, LLC. [hereinafter "FFC" or collectively as "Defendants"] is a "supplier" as defined in O.R.C. §1345.01© ) which is engaged in the business of soliciting and effecting consumer transactions and a "creditor" as that term is defined at 15 U.S.C. §1602(f) who either directly extends or arranges for the extension of credit to consumers payable in 4 or more installments. Its principal is a person named John Cary who primarily dealt with the Plaintiff as alleged herein [hereinafter referred to as "Cary"].

5. Defendant, John M. Cary [hereinafter "Cary or collectively as "Defendants"], is the principal owner and operator of Furniture Finance Connection LLC who, while an individual, has full, total and complete control of its daily activities where the corporation is nothing more than his alter ego, who, at all times referenced herein, exclusively dealt with the Plaintiff and personally engaged in the conduct giving rise to the allegations in

- 2 -

this complaint. Additionally, Cary's personal and abusive behavior toward Plaintiff and went outside and beyond the scope of any lawful corporate activity subjecting him to personal liability as well.

6. Defendant Synchrony Bank [hereinafter "Synchrony" and collectively as "Defendants"] is a "creditor" as that term is defined at 15 U.S.C. §1602(f) who either extends credit directly or accepts the assignment of or purchases retail installment sales obligations where payment is made by consumers in 4 or more installments. Additionally, Synchrony, as a "holder" by virtue of law, of a retail installment sales contract it takes subject to all claims and defenses which could be asserted against the seller of the goods.

7. Defendant, Mattress By Appointment Cincinnati LLC, [hereinafter MBAC" or collectively as "Defendants"] is a "supplier" as defined in O.R.C. §1345.01© ) which is engaged in the business of soliciting and effecting consumer transactions and a "creditor" as that term is defined at 15 U.S.C. §1602(f) who either directly extends or arranges for the extension of credit to consumers payable in 4 or more installments.

## General Factual Allegations

8. On or about June 6, 2020 the parties entered into or originated a consumer transaction as defined at O.R.C. §1345.01(A) in the form of a "credit sale" as that term is defined in 15 U.S.C. §1602(g) which ultimately resulted in a retail installment sales obligation for both the purchase and financing of various items of furniture.

9. According to the sales agreement the cash price of the goods purchased by Plaintiff was $4197. Cary then offered Plaintiff financing at no interest or finance charge for 18 months. Plaintiff, however, inquired whether she could have 24 months to pay instead. Cary responded that he could but the "finance company would charge him an additional $200" which charge he must pass on to Plaintiff to which charge Plaintiff agreed to pay. With the additional $200 and tax the total obligation came to $4693.80.

10. Plaintiff received no credit disclosure documentation at the time other than a sales agreement [exh. "A"] and a sales receipt supposedly from Defendant Synchrony [exh. "B"] none of which would satisfy the requirements of the Act.

11. On or about June 11, 2020 a couch was delivered to Plaintiff. It was manufactured with formaldehyde which was not disclosed to Plaintiff at the time of purchase. Plaintiff is allergic to formaldehyde which requires that when she sits on the couch she must put a blanket over it.

12. On or about June 25, 2020 Cary called and informed Plaintiff that the dining room table arrived but with only 2 of the 4 chairs she purchased and without the bench. He inquired whether she still wanted him to deliver to which she responded affirmatively. The table and chairs were delivered on June 29th. While the delivery people were at her home it was confirmed that the couch previously delivered had defects. Pictures were taken and sent to Cary who agreed to replace the couch. He stated he had another one coming in the following week and would "switch them out."

13. Plaintiff thereafter continued to frequently inquire of Cary about the replacement of her couch and other items she purchased but kept being put off. On July 31, 2020 the bedroom set was delivered in pieces where Plaintiff observed that it was not what she agreed to purchase. It was not real wood and contained much, if not all, cheap quality particle board. She refused to accept delivery. At which point Cary was contacted and an argument ensued where Cary loudly and abusively argued with Plaintiff. Plaintiff, now fed-up, having waited 2 months and having received defective goods, partial delivery and substituted items told Cary that she wanted a refund. Cary responded that there were no refunds and that she was "SOL".

14. Thereafter, Plaintiff registered a dispute with Defendant Synchrony who, rejected her dispute.

15. As of this writing Plaintiff, although she entered into a retail installment sale with Defendants for a number of furniture items 5 months ago, still has not received all that she purchased and, at least one of the items delivered, is defective and damaged and some of what was delivered was not what she purchased yet her request for a refund has been denied by Defendants.

### Claim One
### [TILA]

### Count One

16. This claim is made pursuant to the federal truth-in-lending act [hereinafter"TILA" or the "Act"] 15 U.S.C. §1601, et seq. and Regulation Z, 12 cfr 1026.1, et sq.

17. Plaintiff hereby incorporates each and every allegation of paragraphs 2-14 as if fully rewritten.

18. On or about June 6, 2020 the parties entered into a closed end "credit sale" as it is defined in the Act at 15 U.S.C. §1602(h) payable in 4 or more installments.

19. Cary informed Plaintiff that there would be no finance charge or interest if she would repay the indebtedness in 18 installments. When Plaintiff, instead, asked if she could repay the indebtedness in 24 payments, Cary informed her that there would be a $200 charge for doing so because he would be assessed, presumably by Synchrony, which he had to pass on to Plaintiff. Plaintiff agreed and accepted the charge.

20. The $200 charge assessed by Defendants which Plaintiff agreed to pay could be nothing other than finance charge because it is a charge defined in 12 cfr 1026.4(a) payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit.

21. As such any disclosure by the Defendants that there was no finance charge was, therefore, inaccurate and a violation of tila pursuant to 15 U.S.C. §1638(a)(3).

22. As such any disclosure by the Defendants that the APR was zero must also be considered inaccurate and a violation of tila pursuant to 15 U.S.C. §1638(a)(4).

## Count Two

23. Plaintiff hereby incorporates each and every allegation of paragraphs 2-14 and 15-21 as if fully rewritten.

24. Defendants were required by the Act and Reg Z to make certain disclosure of material credit terms to the Plaintiff at the time of the consummation of the transaction in the form of a single credit disclosure statement that would contain all disclosure required enumerated in 15 U.S.C. §1638(a) in a form that the Plaintiff may keep pursuant to 12 cfr 1026.17(a).

25. 15 U.S.C. §1638(a) enumerates a list of required material disclosures which Defendants failed to make and for which Plaintiff is entitled to seek statutory damages.

   (a) The "amount financed", using that term, which shall be the amount of credit disclosed which the consumer has actual use pursuant to 15 U.S.C. §1638(a)(2)(A);

   (b) The "finance charge", not itemized, using that term pursuant to 15 U.S.C. §1638(a)(3);

   (c) The finance charge expressed as an "annual percentage rate", using that term as used in 15 U.S.C. §1638(a)(4);

   (d) The sum of the amount financed and the finance charge, which shall be termed the "total of payments" as used in 15 U.S.C. §1638(a)(5);

   (e) The number, amount, and due dates or period of payments scheduled to repay the total of payments as referenced in 15 U.S.C. §1638(a)(5); and,

> (f) Where the credit is secured, a statement that a security interest has been retained in the property which is purchased as part of the credit transaction, .
> as referenced in 15 U.S.C. §1638(a)(9).

26. Defendant Synchrony, in both counts, is liable pursuant 15 U.S.C. §1641 as an assignee because any violation was apparent on the face of any and all documents associated with this transaction which Synchrony would have seen and Synchrony, as a holder, is subject, by law, to all claims and defenses which Plaintiff could assert against the seller of the goods.

### Claim Two
### [Deceptive, Unfair & Unconscionable Sales Practices]

27. This claim is brought pursuant to the Ohio Consumer Sales Practices Act,

28. Plaintiff hereby incorporates paragraphs 6-14 as if fully rewritten herein.

29. The parties are the same as those alleged in claim one.

30. Plaintiff is a "consumer" as defined in the Act as O.R.C. §1345.01(D).

31. Defendants are each suppliers as defined in the Act at O.R.C. §1345.01© )

32. On or about June 6, 2020 the parties entered into a consumer transaction as it is defined in O.R.C. §1345.01(A).

33. As a holder Defendant Synchrony is subject to any and all claims and defenses which Plaintiff could assert against the seller of the goods pursuant to ftc rule 12 cfr 433.1, et seq.

- 7 -

34. Without limiting the scope of any violation which may have been committed Defendants have engaged in the following unfair, deceptive and unconscionable sales practices.

## Count One
### [general violations]

35. By falsely representing that the subject of a consumer transaction, the goods in question, had certain sponsorship approval, performance characteristics and benefits that they did not have.

36. By falsely representing that the subject of a consumer transaction was of a particular standard and grade when it was not.

37. By falsely representing that the subject of a consumer transaction was available when it wasn't.

38. By falsely representing that the subject of a consumer transaction has been supplied in accordance with an agreement when it was not.

39. By falsely representing that a price advantage existed when it did not.

40. By falsely representing that the supplier had sponsorship, affiliation, and approval that it doesn't.

41. By falsely representing that the subject of a consumer transaction provided certain rights and obligations that it did not have.

42. By knowingly taking advantage of Plaintiff's inability to protect herself.

43. By knowing in advance of the sale to the Plaintiff of her inability to receive a substantial benefit from the subject of the consumer transaction.

44. By knowingly requiring the Plaintiff to enter into a transaction on terms that were substantially one-sided in favor of Defendants.

45. By knowingly making statements of opinion on which the Plaintiff was likely to rely to her detriment.

46. By, without proper justification, refusing to make a refund without conspicuously posting a sign in Defendants' establishment concerning their refund policy.

## Count Two
### [failure to deliver-substitution of goods-rule OAC 109:4-3-09]

47. Defendant suppliers committed the following deceptive and unfair acts set forth in the Ohio AG Rules violating OAC 109:4-3-09 as follows:

48. Defendants accepted money from the Plaintiff in connection with the sale of merchandise on June 6, 2020 and then failed to deliver those goods within 8 weeks.

49. Defendants refused to offer Plaintiff a full refund for failing to do so.

50. Defendants failing to advise consumer of the delay and failed to offer to make a full refund within 2 weeks.

51. Defendants attempted to deliver substituted goods of inferior and lesser value

52. Defendants failed to offer similar goods of equal or greater value.

### **Prayer for Relief**

Plaintiff prays for the following relief:

(a) in claim one for a judgment against each Defendant, joint and severally, for both actual and statutory damages as set forth in 15 U.S.C. §1640;

(b) in claim two for a judgment against each Defendant, joint and severally, for actual damages;

(c) in claim two, in the alternative, for a judgment of rescission of the obligation;

(d) in claim two for treble damages for conduct and behavior which violates an Ohio AG Substantive Rule, conduct which has been declared either unfair, deceptive or unconscionable by a Court of this state and which decision was contained in the AG's Public Inspection File for inspection prior to the date of the alleged unlawful conduct or is a violation of a rule promulgated by the FTC;

(e) in all claims for reimbursement of attorney fees and costs;

(f) for a trial by jury on all appropriate issues; and

(g) for all such other relief this court may deem appropriate.

Respectfully submitted by:

*/s/Steven C. Shane*
Steven C. Shane (0041124)
Trial Attorney for Plaintiff
P.O. Box 73067
Bellevue, Ky. 41073
(859) 431-7800
(859) 431-3100 facsimile
shanelaw@fuse.net

- 10 -